**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 20 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

RODNEY K. THURMAN,

    Defendant - Appellant.

No. 00-3179
(99-CR-10111-01-JTM)
(District of Kansas)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **JONES**, Senior Circuit Judge.[**]

---

Rodney K. Thurman ("Thurman") and Sharolyn J. Goudie were jointly charged in an one-count indictment filed on August 25, 1999, in the United States District Court for the District of Kansas with taking by force and violence or intimidation approximately $60,000.00 from employees of the United Missouri Bank in Wichita, Kansas, the deposits of which were insured by the Federal

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.

[**] Honorable Nathaniel R. Jones, Senior Circuit Judge, U.S. Court of Appeals, Sixth Circuit, sitting by designation.

Deposit Insurance Corporation, in violation of 18 U.S.C. §§ 2113 (a) and 2. On December 29, 1999, Thurman, who was represented by a federal public defender, filed with the district court a petition to enter a plea of guilty and on the same date he entered into a plea agreement with the government. The plea agreement made no reference to a possible increase in Thurman's base offense level by 3 levels for brandishing or possessing a dangerous weapon during the course of his robbery of the bank, as mandated by the United States Sentencing Guidelines ("U.S.S.G.") §2B3.1(b)(2)(E). The agreement also contained a proviso that it was "agreed and understood that this plea agreement is the only agreement between the United States and the defendant concerning his plea of guilty in the above-styled action, and there are no other deals, bargains, agreements or understandings which modify or alter this agreement." The agreement was signed by Thurman and his attorney and by representatives of the United States Attorney's office. The matter was then referred to the Probation Office for a Pre-Sentence Report.

In the Pre-Sentence Report the Probation Department recommended that Thurman's base offense level be increased under U.S.S.G. § 2B3.1(b)(2)(E) by 3 levels because during the robbery "a dangerous weapon, or what appeared to be a dangerous weapon, was displayed or possessed." Without a 3 level increase under U.S.S.G. § 2B3.1(b)(2)(E), Thurman's total offense level would be 21;

with the recommended 3 level increase, his total offense level would be 24. Thurman's criminal history category was VI. The guideline sentencing range for a person with an offense level of 21 and a criminal history category of VI is 77 to 96 months imprisonment. However, if Thurman's offense level be increased by 3 levels to 24, then, coupled with his criminal history category of VI, the guideline sentencing range would be from 100 to 125 months imprisonment.[1]

Thurman's counsel filed objections to the Pre-Sentence Report, alleging that the knife "displayed or possessed" during the robbery did not meet the requirements of U.S.S.G. §2B3.1(b)(2)(E). Although the knife in question was never recovered, in her objections counsel stated that the "knife" consisted of two dinner knives taped together at the handles. It would appear that the knife itself was never pointed at any of the bank employees, but it was used by Thurman who, after demanding money from the bank teller, jumped over the counter and pried open a cash drawer with the knife. Counsel's basic objection was that the dinner knife was not a dangerous weapon. Counsel also objected on the ground that in the negotiations between defense counsel and the government attorney leading up to the plea agreement, the government attorneys promised not to seek any enhancement of Thurman's offense level under U.S.S.G.

---

[1]The Pre-Sentence Report states that "the 1998 edition of the <u>United States Sentencing Commission Guidelines Manual</u> was used in calculating the offense level in this case."

§2B3.1(b)(2)(E). The Probation Department filed a response to Thurman's objections to the report and stated therein that it was the "opinion of the probation office that a dinner knife is capable of inflicting death or serious bodily injury."

At sentencing, the district court heard defense counsel's objections to the Pre-Sentence Report. At the outset of the hearing, in response to query by the court, defense counsel stated that the "only objection" to the Pre-Sentence Report was the recommended 3 level enhancement made under U.S.S.G.§2B3.1(b)(2)(E). It is true that counsel had filed objections to the recommendation of the Probation Department that Thurman's base offense level be raised 3 levels on two grounds: (1) the dinner knife here involved was not a "dangerous weapon" within the Sentencing Guidelines and (2) the United States Attorney had broken his pre-plea-agreement promise not to ask for enhancement. However, at the sentencing hearing held by the district court, defense counsel urged only the first ground, and never mentioned the second. In other words, in the district court counsel did not in any manner pursue the matter of "broken promises" by the government. After hearing, the district court increased Thurman's offense level by 3 as mandated by U.S.S.G. §2B3.1(b)(2)(E) and sentenced Thurman to 125 months imprisonment.

On appeal counsel urges two grounds for reversal: (1) the dinner knife

possessed here does not meet the requirement of U.S.S.G. §2B3.1(b)(2)(E) and (2) the government promised not to seek any such enhancement. We need not consider the latter argument since it was not raised in the district court and cannot now be here resurrected. So, we need only decide whether the dinner knife, admittedly possessed and used by Thurman during the robbery, mandates a 3 level enhancement under U.S.S.G. §2B3.1(b)(2)(E).

As indicated, the district court overruled Thurman's objections to the recommendation by the Probation Department that under U.S.S.G. §2B3.1(b)(2)(E) Thurman's offense level be increased by 3 levels because during the robbery he possessed a dangerous weapon. U.S.S.G. §2B3.1(b)(2)(E) reads as follows:

> **§2B3.1     Robbery**
> . . . .
> (b) Specific Offense Characteristics
>     . . . .
>     (2)     (A)If a firearm was discharged, increase by **7** levels; (b) if a firearm was otherwise used, increase by **6** levels; (C) if a firearm was brandished, displayed or possessed, increase by **5** levels; (D) if a dangerous weapon was otherwise used, increased by **4** levels; (E) if a dangerous weapon was brandished, displayed or possessed, increase by **3** levels; or (F) if a threat of death as made, increase by **2** levels.

In this same general connection, U.S.S.G. §1B1.1, note 1(d) provides as follows:

(d) "Dangerous weapon" means an instrument capable of inflicting death or serious bodily injury. Where an object that appeared to be a dangerous weapon was brandished, displayed, or possessed, treat the object as a dangerous weapon.

In overruling Thurman's objection to the Probation Departments's recommendation that Thurman's offense level be raised 3 levels under U.S.S.G. §2B3.1(b)(2)(E), the district court concluded that the dinner knife which Thurman admittedly possessed and used in the robbery to pry open a cash drawer was of a type that "can be used to inflict serious bodily injury or death." Later, in its order, the district court opined that a dinner knife of the type possessed by Thurman if "jabbed in the eye, it would still result in serious bodily injury to someone without a whole lot of exertion on the part of the user."

As indicated, on appeal Thurman argues that the dinner knife (or two dinner knives with the handles taped together) is not a dangerous weapon. We agree with the district court's analysis of this matter. Certainly a dinner knife jabbed into an eye of another could inflict "serious bodily injury." The fact that the knife was not so used in the instant case or that Thurman had no intention to so do is immaterial. *See United States v. Houck*, 1994 U.S. App. LEXIS 16512 at *4 (10th Cir. June 11, 1994) where we said that "the fact that Mr. Houck may have had no intention of using the knife as a weapon is immaterial." In *Houck*, a case involving an enhancement of an offense level under U.S.S.G.

-6-

§2B3.1(b)(2)(E), we spoke as follows:

> The Guidelines are undoubtedly predicated upon the theory that a sentence should be enhanced if the defendant committed the crime while possessing a dangerous weapon. In short, it is an effort to discourage those persons who commit bank robberies from carrying a weapon. The plain language of the Guidelines requires only possession of a dangerous weapon during the crime.

*Id.* at *4.

Counsel's mild suggestion that to give the guidelines the interpretation given by the district court would render the guideline "unconstitutionally vague" need not be considered by us since it was never raised in the district court. Suffice it to say we are not persuaded by counsel's suggestion that the guideline here involved is "vague." *See United States v. Negri*, 1999 U.S. App. LEXIS 5038 at *15 (10th Cir. Mar. 23, 1999).

Judgment affirmed.

Entered for the Court


Robert H. McWilliams
Senior Circuit Judge